# United States District Court
# Central District Of California
## Western Division

UNITED STATES OF AMERICA

Plaintiff,

v.

TAC TRAN and HARSON CHONG

Defendants.

CASE NO.
2:19CV-04025-ODW
2:19CV-04028-ODW
2:12CR-01016-ODW-1
2:12CR-01016-ODW-2

**ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**

## I. INTRODUCTION

On December 4, 2014 Tac Tran and Harson Chong, co-defendants in case number 15CR-01016, were found guilty following a jury trial of trafficking in controlled substances and possession of firearms in furtherance of drug trafficking crimes. [DE-135]. They were sentenced to a total of 420 months and 180 months respectively. [DE-178, 163.] On December 3, 2017 the judgments were affirmed on the consolidated appeals. (DE-203). On May 2, 2019 Tran and Chong filed a Notice of Motion and Motion to Vacate, Set Aside Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255. [DE-207 & 209.]

1

The thrust of the 2255 motions is that respective counsel for each defendant failed to argue in the suppression motion: (1) on behalf of Chong, that one of the officers was standing in the curtilage of Chong's home when he observed drug related activity, thus violating his 4th Amendment rights. (2) on behalf of Tran, it is argued that his attorney did not argue aggressively enough that Tran had standing to raise the same 4th Amendment argument regarding the driveway of the residence as being curtilage of the home. Tran was in something of a Catch-22 in arguing standing to raise an argument of an expectation of privacy in someone else's (Chong's) residence without as the same time risking that the contraband found in various rooms of the house would be attributed to him. Initially law enforcement was of the view that Tran was living at the location because he was observed arriving at the location around 9:00 p.m. and appeared to let himself in with a key.

Later, Tran filed a motion to suppress citing *United States v. Grandberry*, 730 Fed 3d 968 (9th Cir. 2013) challenging the "parole sweep" search. The curtilage argment was not made in the trial court and therefore was not entertained on appeal.

The argument, on behalf of both Chung and Tran, is that the curtilage issue had sufficient merit and the legal basis was sufficiently sound that it was "below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington*, 466 U.S. 668, 697 (1984). The Court disagrees. In fact, the Court will dispose of this motion without the need to address *Strickland*. Since this entire motion rests on whether the driveway was curtilage and therefore entitled to 4th Amendment protection, resolution of that single question will be dispositive of these motions.

**A. SALIENT FACTS**

Law enforcement was surveilling a residence located at 2514 Abonado Place, in Rowland Heights where Chong resided and where it was believed that Tran may have been staying. While watching the residence, Tran was seen arriving on a motorcycle. It

2

appeared that he let himself into the front door apparently by using a key. Chong disputes that Tran used a key to enter the residence. Officers climbed a low wall separating the Chong residence from the house next door. One officer standing in the driveway of the house, looking into the open garage door, observed Tran, now inside the garage, holding a baggie containing a white crystalline substance which the officer believed to be methamphetamine. When Tran saw that he was being observed, he tossed the baggie onto a coffee table. (L.A. Sheriff's Dept narrative report # 912-04874-2932-151, DE-29-2) In the suppression motions no mention was made of the fact that one of the officers in the driveway constituted impermissible presence in the home's curtilage and therefore under 4th Amendment protection. The arguments both focused on the propriety of the parole compliance search.

## B. CURTILAGE DEFINED

As can be seen from the photographs taken of the front of the residence from the street, (12-cr-1016, DE-79-15) it appears that the driveway leading to the two-car garage is barely 1-1/2 car lengths. The interior of the garage is visible from the sidewalk when the overhead garage door is open.

In *United States vs. Dunn*, the Supreme Court reaffirmed its holding in *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735 (1984). There, the Court recognized that the Fourth Amendment protects the curtilage of a house and that the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself. 466 U.S., at 180, 104 S.Ct., at 1742. In *Oliver* the Court identified "the central component of this inquiry as whether the area harbors the 'intimate activity associated with the sanctity of a man's home and the privacies of life.' " Ibid. (quoting *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886)).

"Drawing upon the Court's own cases and the cumulative experience of the lower courts that have grappled with the task of defining the extent of a home's curtilage, we

believe that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by. See *California v. Ciraolo*, 476 U.S. 207, 221, 106 S.Ct. 1809, 1817, 90 L.Ed.2d 210 (1986) (POWELL, J., dissenting) (citing *Care v. United States*, 231 F.2d 22, 25 (CA10), cert. denied, 351 U.S. 932, 76 S.Ct. 788, 100 L.Ed. 1461 (1956); *United States v. Van Dyke*, 643 F.2d 992, 993–994 (CA4 1981)). We do not suggest that combining these factors produces a finely tuned formula that, when mechanically applied, yields a 'correct' answer to all extent-of-curtilage questions. Rather, these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Dunn,* 104 S.Ct at 1140.

Applying those factors here, it is beyond serious debate that there was no expectation of privacy with respect to the interior of the garage or the driveway leading to the garage, when the garage doors were open. There was no effort to shield either the driveway or the garage from view of passers-by or for that matter, motorists. The area could not be more open to public view. Indeed, as can be seen from Document 79-15 in case 12-cr-1016, the entire front of the house, not just the driveway, was paved. It would appear that the area was used to park vehicles. It also appears that a portion of the area which could be characterized as "driveway" was also used as access to the front door. There is no fencing to limit access from the sidewalk to the property known as 2514 Abonado Place. See also DE-6-2 filed in Case 19-CV-4025, the government's opposition to the instant motion. It is difficult to imagine a way in which the area in question could be made more open to public view than it already is. Absolutely no steps were taken by the homeowner to shield the area from public view. While the Supreme Court cautions against establishing a check-list to determine the extent of curtilage, here no check list

or formula is required. By any reasonable measurement, the area of and adjacent to the driveway are not within the ambit of constitutional protection afforded

residential structures and could not reasonably be expected to fall within 4th Amendment protection. This is not a close question and to argue that an attorney was remiss in not arguing that the area is entitled to protection as curtilage to the residence has no merit whatever.

## II. CONCLUSION

A defense attorney cannot be criticized for his forbearance in making a specious argument. It is not required that an attorney argue every conceivable issue on appeal, especially when some may be without merit. Indeed, it is his professional duty to choose among potential issues, according to his judgment as to their merit and his tactical approach. See *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308 (1983). Consequently, defense counsel, in their professional judgment, viewed the more promising issue supporting suppression as the parole compliance sweep. That was a reasonable judgment. The curtilage argument, under the circumstances, had no merit whatsoever. Therefore, Chong's attorney was not remiss in not raising it and Tran's attorney cannot be criticized for not aggressively arguing his standing to chase that loser down a rabbit hole. Had they each done what they are now being criticized for not having done, the outcome would have been the same. The Motions to Vacate, Set Aside or Correct the sentences of both Tac Tran and Harson Chong are therefore DENIED.

IT IS SO ORDERED.

DATE: October 08, 2019

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE

5